**Dated: September 13, 2016**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                    )
                                          )
TERRY McKAY and                           )    Case No. 15-13766-JDL
DARBY McKAY,                              )    Ch. 7
                                          )
        Debtors.                          )

**MEMORANDUM OPINION AND
 ORDER DISMISSING CASE**

Before the Court is the *Second Motion of the United States Trustee to Dismiss Case Based on the Presumption of Abuse and the Totality of Circumstances Pursuant to 11 U.S.C. § 707(b)* filed on May 18, 2016 ("the *Motion*") [Doc. 58] and *Debtors' Response to Second Motion of the United States Trustee to Dismiss* filed on June 7, 2016 ("the *Response*") [Doc. 60]. The *Motion* of the United States Trustee ("the UST") is premised upon both the presumption of abuse under §707(b)(2) and the "totality of the circumstances" under §707(b)(3). First, the UST asserts that Debtors' income exceeds the applicable state median family income and that they fail the "Means Test" as their

Schedules I and J demonstrate an ability to pay funds to their unsecured creditors. Secondly, the UST asserts that under §707(b)(3) the "totality of the circumstances" demonstrates abuse. The Court held the trial on the issues on August 3 and 18, 2016. After carefully considering the evidence and arguments, in accordance with Fed. R. Bankr. P. 7052, the Court sets forth the following findings of fact and conclusions of law in support of its order on the UST's *Motion*.

## **Factual Background**

Debtors filed for bankruptcy relief under Chapter 7 on September 30, 2015. At that time Debtors filed their Statement of Your Current Monthly Income (Official Form 22 A-1) which reflected a total current monthly income of $7,599.56 and an annual income of $91,194.72. [Doc. 1, pg 63, ll.12 b]. Since this annual income was in excess of the median family income of $53,855.00 for the State of Oklahoma, there existed a "presumption of abuse" which required Debtors to complete a Chapter 7 Means Test Calculation to determine the amount of disposable income that would be available to pay unsecured creditors in a Chapter 13 proceeding (Official Form 22A-2) [Doc. 1, pgs. 65-73]. In Part 3 of the Means Test the Debtors monthly disposable income was calculated to be $1,321.10 which results in the Debtors ability to repay their non-priority unsecured creditors in a Chapter 13 the total sum of $79,266.00 over the course of five years (Official Form 22A-2)[Doc.1, pg. 72].

Based on Debtors' Schedules I and J, the Statement of Your Current Monthly Income and the Means Test Calculation, on December 10, 2015, the UST filed a *Motion to Dismiss Case Based on the Presumption of Abuse and the Totality of Circumstances*

*Pursuant to Eleven U.S.C. §707(b)*. [Doc. 18]. On January 21, 2016, the Court entered an *Agreed Order Converting Case to One Under Chapter 13*. [Doc. 30]. On February 5, 2016, Debtors filed both their Chapter 13 Plan [Doc. 39] and their Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period ("Means Test"). [Doc. 40]. Under this Means Test, Debtors calculated their monthly disposable income for purposes of the Chapter 13 Plan payment to be $550.19. [Doc. 40, pg. 11].

On March 10, 2016, the standing Chapter 13 Trustee filed an objection to the proposed Chapter 13 Plan to which Debtors responded by filing a motion to reconvert their case back to one under Chapter 7. [Doc. 50]. The stated reason for the motion to reconvert was that since the case had been converted to a Chapter 13, Debtors "have incurred significant medical expenses . . . they will have significant ongoing medical expenses as a result of Mrs. McKay's various health issues . . . and believe these expenses will be above and beyond the $500 per month listed on Schedule J". On May 5, 2016, the Court entered its *Order Granting Debtors' Motion to Convert Case to a Chapter 7*. [Doc. 52].

This brings us to the present consideration of the UST's second *Motion* and Debtors' *Response* concerning dismissal of this now reconverted Chapter 7 case for abuse and upon which the Court conducted an evidentiary hearing on August 3 and 18, 2016.

### Dismissal for Abuse Under §707(b)

Section 707(b) was added to the Bankruptcy Code in 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act and was amended extensively in 2005 under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Post-BAPCPA,

§707(b) now provides that a Chapter 7 case may be dismissed, or converted to a Chapter 11 or 13 with consent of a debtor, to prevent abuse of the Chapter 7 provisions. Specifically, §707(b)(1) provides, in part, as follows:

> . . . the court, on its own motion or on a motion by the United States trustee, . . . may dismiss a case *filed by an individual debtor under this chapter [Chapter 7]* whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter [Chapter7]. (Emphasis added).[1]

Sections 707(b)(2) and (b)(3) provide two alternatives pursuant to which a court can find relief under Chapter 7 to be abusive. First, under §707(b)(2), the Court can determine whether the presumption of abuse arises pursuant to the Means Test calculation of disposable income. Second, if the presumption does not arise or the presumption has been rebutted by the debtor establishing "special circumstances", the Court can evaluate whether abuse exists under the "totality of circumstances" test pursuant to §707(b)(3). The moving party bears the burden of proof to support a §707(b) motion by a preponderance of the evidence. *In re Palmer,* 542 B.R. 289 ( Bankr. D. Colo. 2015).

### **Presumption of Abuse Under §707(b)(2)**

Pursuant to §707(b)(2), a bankruptcy court "*shall presume abuse exists* if the debtor's current monthly income reduced by the amounts determined under [subsection (b)(2)(A)]" is greater than the threshold amounts in subsections (b)(2)(A)(i)(I) or (b)(2)(A)(i)(ii). The statutory formula set forth in §707(b)(2) is referred to as the "Means

---

[1] The emphasized language is added to point out that while the present case is one not originally filed under Chapter 7 but converted from Chapter 13, the overwhelming majority of courts have decided that applying §707(b) to cases converted to Chapter 7 is in accord with the goals under BAPCPA of avoiding abuse of the Bankruptcy Code. See e.g., *In re Burgher,* 539 B.R. 868 (Bankr. D. Colo. 2015); *Fokkena v. Chapman (In re Chapman)*, 447 B.R. 250 (8th Cir. BAP 2011).

4

Test". Essentially, the Means Test is used to determine whether a presumption of abuse arises in a debtor's bankruptcy case using a debtor's current monthly income and certain allowed deductions where the debtor's current monthly income exceeds the median family income for the applicable state and family size.

Section 707(b)(2) provides, in pertinent part:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii) and (iv), and multiplied by 60 is not less than the lesser of –
> (I)   25% of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or
> (II)  $12,475.

In practice, a debtor determines Means Test eligibility by filling out Official Form 22A-2.

For the purposes of this test, a debtor's current monthly income ("CMI") is defined under §101(10A), as:

> (A) . . . the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on-
>
> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>
> (ii) the date on which current income is determined by the court for purposes of [Chapter 7] if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii) . . ..

Once a debtor's current monthly income is determined, certain expenses are then subtracted. A debtor is entitled to deduct expense amounts specified under the National

5

and Local Standards[2], and, in some cases, a debtor may deduct actual expenses. Finally, a debtor is permitted to deduct average monthly payments for secured debts and priority claims.[3]

If a debtor's disposable income, as determined by the Means Test, exceeds the threshold described in the §§707(b)(2)(A)(i)(I) or (b)(2)(A)(i)(II), then the debtor's case is presumptively abusive and subject to dismissal under §707(b)(1). If, after performing the calculations under the means test, the presumption of abuse arises, the Court has no discretion and must dismiss the chapter 7 case unless a debtor is able to rebut the presumption by demonstrating special circumstances pursuant to §707(b)(2)(B).

According to Debtors' Schedule F, the nonpriority, unsecured claims totaled $68,690.74 - 25% of that amount is $17,172.68. Debtor's original Means Test filed with the Petition showed monthly disposable income of $1,321.10, which when multiplied by sixty months totaled $79,266.00. [Doc. 1, page 72]. These figures clearly indicated a presumption of abuse, as the disposable income would have resulted in a 100% payout to unsecured debt and necessitated the dismissal of the case or Debtors' conversion of the case to one under Chapter 13. Debtors elected the latter option and consented to the conversion to chapter 13. However, on May 5, 2016, the case was reconverted to a Chapter 7 pursuant to Motion by the Debtors.

After the case's re-conversion to Chapter 7, Debtors filed Amended Schedules I and J and Amended Means Test, [Doc. 61], which showed gross monthly income of $7,906.99 and net income of $5,260.44, not significantly different from the original Means Test and

---

[2] 11 U.S.C. §707(b)(2)(A)(ii).

[3] 11 U.S.C. §707(b)(2)(A)(iii)-(iv).

Schedules; however, Debtors' monthly expenses increased, primarily attributable to medical and dental expenses, so that their monthly net income was reduced to $98.83. [Doc. 61-1, pg. 6]. This discrepancy between Debtors' prior Means Test indicating a presumption of abuse and the ability to pay creditors and their post-conversion Means Test indicating no ability to pay forms one of the two issues before the Court (the other being the presumption of abuse under the "totality of the circumstances").

Under §707(b)(2)(A)(i)(I) and (II), the Court is to presume abuse exists if the difference between Debtors' current monthly income and allowable expenses, multiplied by 60, exceeds the lesser of $7,475.00 or $12,475.00.  The evidence presented by the UST showed Debtors could pay much more than $12,475 under the expense standards documented by an examination of Debtors' records, primarily their bank statements as well as the Means Test initially filed by the Debtors.  Therefore, the UST has established a presumption of abuse under §707(b)(2).

The Debtors testified and produced evidence that in the six months *following* the filing of the petition in September 2015, they expended a monthly average of $1,193.49 in medical expenses, and in the six months immediately *preceding the reconversion* of the case to Chapter 7 in May 2016, they expended an average of $1,107.70.[4]  Their medical expenses under each of those two time periods may well have been sufficiently high so as

---

[4] Debtors' Exhibit 3, pages 22-57, reflected an average of $1,107.70 in medical expenses for the six months prior to the conversion of the case to Chapter 7. Debtors' Exhibit 3, pages 18-45, reflected the average spent on medical expenses of $1,193.43 for six months following the filing of the petition.  Had these expenditures been for the six months preceding the filing of bankruptcy and been involved in the calculation of the Means Test as of the filing date there *might* have been no presumption of abuse.

7

to avoid a presumption of abuse.  The problem, however, is that the Means Test is not determined by post-petition expenditures but by those existing at the petition date.

The great weight of authority holds that the means test calculation of §707(b)(2) is based on a "snapshot" of a debtor's financial situation *as of the petition date,* without consideration of whether the debtor's expenses may change after that date.  *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wisc. 2006); *In re Rudler*, 388 B.R. 433, 438 (1st Cir. BAP 2008); *In re Haar,* 360 B.R. 759 (Bankr. N.D. Ohio 2007).  Thus, post-petition changes to a debtor's income and expenses, as well as a debtor's future intentions, while possibly relevant to a determination of abuse under the "totality of circumstances" test under §707(b)(3), are not taken into consideration when the granting of relief should be deemed to be presumptively abusive under §707(b)(2).  *In re Polinghorn*, 436 B.R. 484, 488 (Bankr. N.D. Ohio 2010).

Debtors introduced no evidence as to their medical expenses on the petition date except as shown by the Means Test filed with the petition-approximately $500.00 per month, a figure close to that shown by the UST's examination of Debtors' bank statements dated after the reconversion of the case.  With that figure, rather than the post-petition medical expenses more than double that amount, Debtors do not pass the Means Test.  Under the Means Test as of the date of the petition, utilizing the expenses as of that date, a presumption of abuse exists.  The UST was therefore correct in his statement to the Court at trial that post-petition changes of income and expenses reflected by the Debtors' Amended Schedules and Amended Means Test filed after the filing of the Motion were not relevant.

However, under §707(b)(2)(B), a debtor may rebut a presumption of abuse under the Means Test "by demonstrating special circumstances . . . that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative". For the debtor to successfully demonstrate a special circumstance, he or she must fulfill both the procedural and substantive requirements of §707(b)(2)(B). To satisfy the procedural requirements, a debtor must "itemize each additional expense or adjustment of income and to provide -- (I) documentation for such expense or adjustment; and (II) a detailed explanation of the special circumstances that make such expenses or adjustments to income necessary and reasonable.[5]   Additionally, a debtor must "attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required."[6]

A review of the Debtor's Means Test indicates that the Debtor failed to provide any itemization of expenses or adjustments to income to support a finding of special circumstances at the time of filing same. The only evidence presented by the Debtors was contained in Debtors' Exhibit 3, pages 18-57, which reflected an increase in medical expenses for the six months following the filing of the petition and the six months prior to the conversion of the case to Chapter 7. Had these expenditures been for the six months preceding the filing of bankruptcy and been involved in the calculation of the Means Test as of the filing date there *might* have been no presumption of abuse.

To satisfy the substantive requirement, a debtor must demonstrate "special circumstances, such as a serious medical condition or a call or order to active duty in the

---

[5] 11 U.S.C. §707(b)(2)(B)(ii).

[6] 11 U.S.C. §707(b)(2)(B)(iii).

9

Armed Forces . . . *that justify additional expenses or adjustments of the debtor's current monthly income for which there is no reasonable alternative.*"[7]  There is no doubt that Mrs. McKay has numerous, serious medical conditions which significantly and negatively impact the quality of her life.  The Court is extremely sympathetic to her circumstances.  Indeed, affording the Debtors possible relief due to her medical condition is compelling.  However the special circumstances exception does not permit every conceivable unfortunate or unfair circumstance to rebut the presumption of abuse.

The determination of whether a medical condition establishes the "special circumstances" necessary to rebut the presumption of abuse is regarded only in a financial, not quality-of-life context.  Debtors did not substantiate any additional medical expense as of the petition date beyond those expenses which they had listed on the original Means Test, approximately $500.00 per month.  The Debtors did assert that during the six months prior to the reconversion, their medical expenses had increased to approximately $1,100.00 causing their current net disposable income to be reduced to $98.83, thereby asserting a justification for the conversion to chapter 7.[8]

The UST, however, clearly established through an analysis of Debtors' bank records, with every benefit considered in Debtors' favor, that the actual medical expenses were approximately $500.00 per month, the amount originally claimed in the initial filing. [UST Exhibits 8,10,16,17 and 18].  When Debtors' actual *demonstrable* expenses are taken into account, their monthly disposable income to pay secured creditor rises from $98

---

[7] 11 U.S.C. § 707(b)(2)(B)(i) (emphasis added).

[8] Debtors' Amended Schedule J [Doc. #79] included increases in expenses for cellphone, telephone, internet, satellite and cable services in an amount totalling $180.00. No evidence was presented as to the reason for the increase in these expenses.

10

to over $700.00, a figure when multiplied by sixty months clearly establishes a presumption of abuse.[9]

## Totality of Circumstances Under §707(b)(3)

The UST's *Motion* was also premised upon §707(b)(3). Section §707(b)(3) provides that when the presumption of abuse *does not arise* under §707(b)(2)(A),(emphasis added), or in cases when the presumption is rebutted by a debtor under §707(b)(2)(B), a court's inquiry for dismissal under §707(b)(1) must continue under §707(b)(3) where the bankruptcy court has the discretion to make a finding of abuse based on the specific facts of the case. Specifically, §707(b)(3) provides, in part, that when a presumption of abuse does not arise under the Means Test or is rebutted by a debtor, a bankruptcy court "shall consider – (A) whether the debtor filed the petition in bad faith; or (B) *the totality of the circumstances* . . . of the debtor's financial situation demonstrates abuse". (Emphasis added). Unlike the mechanical formula provided by the Means Test, section 707(b)(3) allows the court to make a broad, flexible review encompassing any factors that are relevant to the debtor's financial condition including post-petition events that affect a debtor's finances. *In re Jensen*, 407 B.R. 378, 384 (Bankr. C.D. Cal. 2009); *In re Parada*, 391 B.R 492, 500-01 (Bankr.S.D. Fla. 2008); *In re Riley*, 2010 WL 3718017 (Bankr.D. Mass. 2010).

The UST argued that Debtors' history, both pre-and post-petition, of gambling coupled with their excellent health insurance which negated or mitigated their post-petition

---

[9]The evidence was clear that total deductible/co-pay under Debtors' health insurance plan was $1,100.00 per year. [Debtors' Ex.1, pg. 280] and that the increase in medical expenses for the six months prior to reconversion was due to non-recurring monthly eye and dental procedures.

medical expenses constituted a "totality of circumstances" indicating abuse. In response, Debtors presented evidence that Debtors had basically "broken even" on their gambling so as not to have affected creditors, that they had stopped gambling (albeit continued to do so during the Chapter 13) and that gambling is therefore not a factor in determining abuse. Further, they argued that substantial future medical expenses far exceeded their insurance coverage. Unfortunately for Debtors, however, the "totality of the circumstances" test under §707(b)(3) which may take into account post-petition financial circumstances upon which Debtors introduced evidence cannot be reached by the Court if the court finds abuse under the Means Test as of the date of the filing of the petition. Because this Court has found that presumption of abuse existed under the Means Test at the time of the filing of the petition and has not been rebutted by "special circumstances", it need not reach the issue of whether dismissal was appropriate under §707(b)(3).

Accordingly, pursuant to 11 U.S.C. §707(b)(2), the Motion to Dismiss filed by the United States Trustee is **sustained**, and the case is **DISMISSED** without prejudice.

# # #